**HARRIS COUNTY CHILDREN'S PROTECTIVE SERVICES,
Appellant,**

v.

**Diana OLVERA and Jane S. Thies, Appellees.**

No. 14–97–00275–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 25, 1998.

William S. Cox, Sandra D. Hachem, Houston, for appellant.

Diana Olvera, Houston, for appellees.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## CORRECTED OPINION ON MOTION FOR REHEARING

FOWLER, Justice.

We withdraw our previous opinion and substitute this one for it. The dispositive question in this appeal is whether a family district court judge has jurisdiction to award ad litem attorney's fees for services performed on appeal when that issue was not remanded to the trial court. A secondary question is whether this court's mandate ordering one of the parties to pay all costs on appeal invested the family district court with the authority to assess as part of those costs attorney's fees on appeal. The answer to both questions is no, and, for that reason, we (1) reverse the judgment of the trial court awarding these fees to appellees, Diana Olvera ("Olvera") and Jane C. Thies ("Thies"), and ordering appellant, Harris County Children's Protective Services ("CPS"), to pay the fees and (2) remand the case to the trial court for the judge to award the ad litems their fees on appeal.

### THE TWO APPEALS

Olvera, Thies, and CPS have been parties to two separate appeals in this court. Both of these appeals stemmed from the trial court's award of ad litem attorney's fees for services performed in a divorce/custody case between Cathy Lynn Walker and James Bryan Walker in which CPS intervened. The first appeal involved a judgment awarding ad litem attorney's fees in the Walker divorce for services performed by Thies as attorney ad litem for the Walker children and for services performed by Olvera as attorney ad litem for the indigent James Walker. *See* TEX. FAM.CODE ANN. § 11.10(d)

(Vernon 1986).[1]  In the first appeal, CPS contended the trial court abused its discretion when it determined the Walkers were indigent and when it awarded allegedly unreasonable and excessive ad litem attorney's fees to Olvera and Thies.  The judgment awarded a specific amount of fees for trial, and awarded fees for the appeal, but did not award a specific amount.  This court affirmed the trial court judgment.  The mandate did not remand any issues to the trial court, including ad litem attorney's fees on appeal.  This second appeal involves the ad litem attorney's fees the trial court awarded to Olvera and Thies for services they performed during the *first appeal.*  The court, however, did not set the amount of these appellate fees until *after this court's mandate issued in the first appeal,* and, as we noted, we did not remand this issue to the trial court.

## THE TRIAL COURT'S SUPPORT FOR ITS ORDER

The trial court cited five reasons its award of appellate attorney's fees was appropriate: (1) The December 16, 1994, order involved in the first appeal setting fees for work performed in the trial court; (2) a January 30, 1995, order awarding appellate attorney's fees but reserving a specific amount until after the appeal; (3) our mandate in the first appeal ordering CPS to "pay all costs incurred by reason of this appeal"; (4) section 11.10(d), (e) of the Texas Family Code (requiring a trial judge to appoint attorneys ad litem to represent children and indigent parents when a governmental entity seeks termination of the parent-child relationship and stating that the ad litems are entitled to a reasonable fee to be paid by the county if the

parents are indigent); and (5) section § 11.18(a) of the Texas Family Code (stating that reasonable attorney's fees may be taxed as costs and may be ordered paid directly to the attorney).

## THE PROCEDURAL TIME LINE

This case has a very unusual procedural time line which impacts the outcome of the case, and so we have chosen to list it, despite its length.

a.) September 2 and 8, 1994—The trial court enters Orders awarding Olvera and Thies ad litem attorney's fees of $3,525 and $3,037.50 to be paid by CPS for Olvera's and Thies's services.

b.) December 7, 1994—CPS files a cost bond for its appeal of the two orders.

c.) December 16, 1994—The trial court signs "Interlocutory Judgment on Interim Attorney Ad Litem Fees" reducing the September orders to judgment and orders post judgment interest to accrue from September until fee payment.

d.) January 30, 1995—The trial court enters an "Order Granting Entitlement to Additional Ad Litem Fees on Appeal" declaring "[t]he *amount* of attorney's fees to be awarded to Movants for defending the ... appeal will be determined after submission of a proper Motion for Costs." (emphasis added).

e.) April 30, 1996—The trial court severs the ad litem attorney's fees issue from the remainder of the case and dismisses the remainder of the case.  At this time, the December 16, 1994 interlocutory judgment becomes final.[2]

---

1.  The proceedings involved in this appeal were initiated before April 20, 1995, the effective date of the recodified family code.  By legislative mandate, the law in effect on the date the proceedings commenced governs this case.  Thus, even though additional changes were made to the Family Code during the pendency of this case in the trial court and before this court, those changes are not applicable to the case.  *See* Acts 1995, 74 th Leg., Ch. 20, § 3(a).  Consequently, all references to the family code are to the code in effect before April 20, 1995.  Although the proceedings also occurred before the effective date of the revised rules of appellate procedure, which became effective September 1, 1997, see

60 Tex B.J. 411 (1997), we will refer in the body of the opinion to the new appellate rules because no substantive changes were made in the rules involved in the appeal.  We will cite to the former appellate rule numbers in footnotes.

2.  Under rules 27.1 and 27.3 of the Texas Rules of Appellate Procedure, the severance order cured the interlocutory nature of the December 16, 1994, order and validated the otherwise premature appeal.  *See* Tex.R.App. P. 27.1, 27.3.  For the former rules, see Tex.R.App. P. 41(c), 49 Tex B.J. 566 (1986); Tex.R.App. P. 58(c), 49 Tex B.J. 575 (1986).

f.) July 11, 1996—This court's opinion in the first appeal affirms the trial court's award of ad litem fees in the December 16 judgment.

g.) October 2, 1996—This Court's mandate in the first appeal orders CPS to pay all costs for the appeal.

h.) January 15, 1997—The trial court enters an order (1) awarding Olvera $8,468.75 and Thies $7,625 in ad litem fees incurred during the first appeal and (2) ordering CPS to pay the fees as set forth in the mandate.

## NO JURISDICTION TO AWARD APPELLATE ATTORNEYS FEES

■ The first reason the trial court erred in its award of appellate attorney's fees to Olvera and Thies was because it had lost plenary power over the issue of attorney's fees on appeal. Once it lost its plenary power over the issue, the trial court no longer had jurisdiction to award attorney's fees. If no motion for new trial is filed, a trial court loses jurisdiction to act in a case 30 days after the judgment becomes final. *See* TEX.R. CIV. P. 329b(d). When a case is appealed and the trial court loses plenary power, the trial court retains continuing jurisdiction only to order or modify the amount or type of security, to suspend execution of the judgment, or to correct clerical mistakes in the judgment. *See* TEX.R.APP. P. 24.3 [3]; TEX.R. CIV. P. 316. But, even the court's "exercise of discretion" in setting the security is subject to review by the court of appeals. TEX.R. CIV. P. 24.3 [4]; TEX.R. CIV. P.

24.4.[5] In this case between CPS and the ad litems, the trial court retained plenary jurisdiction over the case until 30 days after the severance order was signed; thus, the December 16, 1994 judgment was indeed interlocutory, as noted on its face. During the time that it had plenary jurisdiction over the case, the trial court held, in its January 30, 1995, order, that the ad litems were entitled to attorney's fees on appeal. This order was valid. But, during this same period the ad litems never requested, and the trial court never fixed, a specific amount the ad litems should be awarded. By the time this Court's mandate issued six months after the severance order, the trial court was far beyond its plenary jurisdiction to award an amount of attorney's fees on appeal. The only way the court could regain jurisdiction over attorney's fees or any other issue in the case was if this Court had reversed and remanded the case to the trial court, or had remanded the case to the trial court to enable it to award ad litem fees on appeal. *See* TEX.R.APP. P. 43.2, 43.3; [6] *see also, Cahill v. Lyda,* 826 S.W.2d 932, 933 (Tex.1992). This court did not remand the case to the trial court, but instead, it affirmed the judgment of the trial court.

■ "When an appellate court affirms a judgment, upon issuance of its mandate the trial court has the duty to give effect to the judgment by executing proper orders." *Myers v. Myers,* 515 S.W.2d 334, 335 (Tex. App.—Houston [1 st Dist.] 1974, writ dism'd); *see* TEX.R.APP. P. 51.1.[7] These orders by the trial court are purely ministerial. "When an appellate court renders a judgment in a case

---

3. For the former rule, see Tex.R.App. P. 47(k), 50 TEX. B.J. 1046 (1987).

4. For the former rule, see Tex.R.App. P. 47(k), 50 TEX B.J. 1046 (1987).

5. For the former rule, see Tex.R.App. P. 49, 50 TEX. B.J. 1046 (1987).

6. For the former rules, see Tex.R.App. P. 80(b), 49 TEX. B.J. 580 (1986); Tex.R.App. P. 81(c), 49 TEX B.J. 581 (1987).

7. Additionally, under former rule 87(a) of the rules of appellate procedure, when the court of appeals affirms the judgment of the trial court

and the mandate has issued, "... the trial court need not make any further order or decree and the clerk of the trial court *shall* proceed to issue execution thereon as in other cases." Tex.R.App. P. 87(a), 49 TEX B.J. 582 (1986) (emphasis added). Rule 51.1 provides that the trial court "need not make any further order," deleting language that the "trial court *shall* proceed to issue execution thereon as in other cases." TEX R.APP. P. 51.1. Rule 51.1 does, however, state that when the trial court clerk receives the mandate, "the appellate court's judgment must be enforced." *Id.* Thus, although the rule does not deal with the issue of general jurisdiction, it supports the rule that, at this point, the trial court has no general jurisdiction over the case. *See* TEX.R.APP. P 43.2, 43.3, and 51.1; TEX.R. CIV. P. 316, 329b(d).

the district court has no jurisdiction to review, interpret or enforce it. It must observe and carry out the mandate of the appellate court. Its orders carrying out the mandate are ministerial." *Myers,* 515 S.W.2d at 335. The trial court's actions after the issuance of our mandate went beyond a ministerial capacity when it used our mandate to initiate a determination of appellate attorney's fees. As the trial court acted without reference to any guiding rules and principles of law by modifying our mandate, the trial court abused its discretion.

Olvera and Thies rely on *Cahill* to support their claim that the trial court had the authority after the conclusion of the appeal to award appellate attorney's fees to them. *Cahill* is factually similar to this case. An ad litem was appointed to represent the missing heirs in an adverse possession claim. As with this case, the ad litem did not present evidence of attorney's fees for the appeal, although the ad litem made a request in the trial court to be paid those fees. In addition, as with this case, the trial court made no specific award of attorneys fees on appeal. Unlike this case, however, the ad litem made a request to the appellate court to be paid his fees on appeal.

After noting that the ad litem had to bring the appeal for the missing heirs, the court concluded that the ad litem was entitled to be paid his attorney's fees on appeal; it also stated that ad litems appointed under rule 244 are entitled to their fees whether they win or lose an appeal. *See* TEX.R.. CIV. P. 244.; *Cahill,* 826 S.W.2d at 933. " 'Forcing attorneys to accept court appointment for a contingent representation would surely frustrate the effective representation of unknown clients.' " *Id.* (quoting *Rhodes v. Cahill,* 802 S.W.2d 643, 647 (Tex.1990)). *The court then remanded the case to the trial court for it to set attorney's fees on appeal.*

■ Olvera and Thies argue that *Cahill* authorizes a trial court to award appellate attorneys fees to the ad litem after the appeal has concluded. We agree that *Cahill* authorizes an appellate court to remand the issue of ad litem appellate attorney's fees, but we disagree that *Cahill* grants the trial court unlimited power to determine ad litem attorney's fees on appeal. To the contrary, under *Cahill,* the general jurisdictional rules we reviewed earlier apply. *See id.* Therefore, the trial court has the power to award ad litem attorney's fees incurred on appeal only if the appellate court remands the issue to the trial court. This means that if an ad litem wants to ensure that her appellate attorney's fees are paid, she should make a request in the trial court for those fees, include a prayer for her appellate attorney's fees in her brief on appeal, and then specifically request the appellate court to remand that issue to the trial court for a hearing and an award. Under *Cahill,* if she makes this request, the appellate court must grant it. *See id.*

Olvera and Thies have not requested this court to remand the issue of appellate attorney's fees to the trial court—they did not ask for it in the first appeal and they have not asked for it in this appeal. As a result, the general rules of jurisdiction apply to their appellate fees on the first appeal, meaning that the trial court had no further power to act in the case except for what we remanded to the judge. As we will explain more fully below, the mandate did not remand the issue of ad litem appellate fees to the judge.

We conclude, therefore, that on January 15, 1997, when the trial court awarded the ad litems a specific amount for attorney's fees on appeal, it had no plenary power over the case to issue such an order and thereby abused its discretion.

## THIS COURT'S MANDATE AWARDING COSTS DID NOT AUTHORIZE THE TRIAL COURT TO AWARD ATTORNEYS FEES ON APPEAL

■ Additionally, the trial court erred because it interpreted our mandate, which ordered CPS to pay all costs on appeal, to invest it with the authority to award attorney's fees on appeal.

"This cause, an appeal from a judgment in favor of appellees, Diana Olvera and Jane S. Thies, signed December 16, 1994, came to be heard on the transcript of the record. We have inspected the record and find no error in the judgment. We order

the judgment of the court below **AF-FIRMED**.

We order appellant, Harris County Children's Protective Services, and their surety, Universal Surety of America, jointly and severally *to pay all costs incurred by reason of this appeal.* This decision is ordered certified below for observance."

**WHEREFORE, WE COMMAND YOU** to observe the order of our said Court in this behalf and in all things have it duly recognized, obeyed and executed.

Although this mandate did not confer any jurisdiction on the trial court to act in the case, *see* Tex.R. Civ. P. 51.1,[8] it is clear the trial court believed our mandate conferred upon it the power to award, as costs, appellate attorney's fees. The reporter's record reflects that while reading the mandate the trial court stated "We order in the mandate, 'we order appellate [sic], Harris County Children's Protective Services, and their Surety, Universal Surety of America, and jointly and severally to pay all cost incurred by reason of this appeal.' That to me using plain language and interpretation means attorney's fees for the appeal." With this interpretation of our mandate, the trial court misconstrued both the meaning of the word "costs" in our mandate and its own power to assess costs incurred by reason of the appeal.

First, we address the meaning of the word "costs". We acknowledge the trial court, when the cause was originally before it, could properly tax the attorney's fees as costs under the Texas Family Code. *See* Tex. Fam. Code Ann. § 11.18(a) (Vernon 1986). Our previous decision, *Harris County Children's Protective Servs. v. Olvera and Thies,* No. 14–95–00020–CV, 1996 WL 387909 (Tex. App.—Houston [14th Dist.] July 11, 1996, no writ) (not designated for publication), recognizes the fact that the trial court may tax, as costs, ad litem attorney's fees. This issue is not in dispute. The dispute concerns the

trial court's interpretation of our mandate which accompanied that opinion.

The trial court erroneously assumed that we used the word "costs" in our mandate in the same manner as it is used in the Texas Family Code. While the word "costs" can include attorney's fees in the family law courts, the word has an entirely different meaning when used in our mandate—a meaning that does not include attorney's fees. On appeal, costs include (1) the filing fees paid to the clerk of the court of appeals, (2) the fee paid to the trial-clerk for the preparation of the clerk's record; and (3) the fee paid to the court reporter for preparation of the reporter's record. *See WesTech Eng'g Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 206 (Tex.App.—Austin 1992, no writ); *see also* Tex.R.App. P. 43.4 (stating that a court of appeals judgment should award to the prevailing party the appellate costs—including preparation costs for the clerk's record and the reporter's record); Tex.R.App. P. 51.1(a) (detailing what costs must be included in the statement of costs: the preparation costs of the appellate record and any court of appeals filing fees); *Ex parte Williams,* 866 S.W.2d 751, 753 (Tex. App.—Houston [1st Dist.] 1993, no writ) (defining costs, under section § 11.18(a) of the Texas Family Code, as fees and charges required by law to be paid to the courts or court officers, the amount of which is fixed by statute); Black's Law Dictionary 346 (6th ed.1990) (defining costs as fees and charges that are required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or court rule). When we order the payment of "all costs incurred by reason of this appeal," we are ordering a party to pay the filing fees, the trial court clerk's fee, and the preparation fee of the reporter's record. We are not ordering a party to pay attorney's fees as part of these costs.[9] Thus, contrary to the

---

8. For the former rule, see Tex.R.App. P. 87(a), 49 Tex. B.J. 582 (1986).

9. Under the new appellate rules, the trial court would have received a statement of costs specifying the costs on appeal. *See* Tex.R. Civ. P. 37.1. However, under the old rules this court sent a statement of costs only if a case was reversed or

if a party failed to pay costs. *See* Tex.R.App. P. 88, 49 Tex. B.J. 583 (1986); Tex.R.App. P. 89, 49 Tex. B.J. 583 (1986). Since we affirmed this case, the trial court did not have the benefit of a statement specifying the costs; but if they had such a statement, it would not have listed attorney's fees as a cost.

Additionally, the new rules give this court au-

trial court's conclusion, the ad litem's attorney's fees on appeal were not costs on appeal, and the trial court abused its discretion by awarding appellate fees on this basis.

## SUMMARY

To summarize, we reverse the final order of the trial court awarding ad litem attorney's fees on appeal because (1) the court had no jurisdiction to make such an award after losing its plenary power, and (2) this court's mandate ordering CPS to pay all costs incurred by reason of the appeal, did not invest the court with authority to award attorney's fees as an item of "costs on appeal." Under *Cahill*, the ad litems could have asked this court to remand the case to the trial court so that the ad litems could prove their fees on appeal; this court would have been required to grant such a request. This court also could have remanded the issue on its own motion. Neither of these situations occurred. We therefore sustain CPS's first point of error. Having found it to be dispositive of the entire appeal, we do not address the remainder of CPS's points. That portion of the trial court's January 15, 1997, order awarding appellate attorney's fees to Olvera and Thies is reversed and this court renders that appellees Thies and Olvera take nothing on these claims. This Court affirms that portion of the order awarding interest to Olvera and Thies based on the attorney's fees validly awarded to Olvera and Thies and confirmed by this Court in its first opinion. In addition, even though Olvera and Thies have not made a request to this Court to remand the case to the trial court for it to award their fees on *this* appeal, we remand this issue to the trial judge for her to set those fees, if there are any, which will be taxed as costs in the case.

---

thority, on occasion, to award attorney's fees on appeal, but this authority is limited to assessing damages for frivolous appeals and the amount is not taxed as costs but is an amount of damages. *See* Tex.R.App. P. 45.